UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

DAVID A. WHITE, et al.,

    Appellants,

v.       CASE NO. 8:09-CV-1555-T-17

JON M. WAAGE, Trustee

    Appellee.

_____/

ORDER

This cause is before the Court on:

Dkt. 9   Brief of Appellant
Dkt. 13  Brief of Appellee
Dkt. 16  Reply of Appellant

In this bankruptcy appeal, Appellants appeal the Order of the Bankruptcy Court dismissing Appellants' Chapter 13 petition.

After a hearing, the Bankruptcy Court denied confirmation of Appellants' Chapter 13 Plan on September 13, 2008, and granted leave to file an Amended Plan. Following the denial of Confirmation, Appellants did not file an Amended Chapter 13 Plan. On November 25, 2008, the Bankruptcy Court dismissed Appellants' Chapter 13 Petition.

I. Standard of Review

In considering an appeal from a bankruptcy court order, the district court reviews conclusions of law <u>de novo</u>, and reviews findings of fact under a clearly erroneous standard. <u>In Re</u>

Case No. 8:09-CV-1555-T-17

<u>Celotex Corp.</u>, 232 B.R. 484, 486 (M.D. Fla. 1998). Mixed questions of law and fact are reviewed <u>de novo</u>. <u>In Re Cox</u>, 493 F.3d 1336. 1340 n. 9 (11th Cir. 2007). A finding of fact is clearly erroneous when the reviewing court on the entire record is left with the definite and firm conviction that a mistake has been made. <u>General Trading, Inc. v. Yale Materials Handling Corp.</u>, 119 F.3d 1485, 1494 (11th Cir. 1997).

Whether a Chapter 13 Plan has been proposed in good faith is a finding of fact reviewable under the clearly erroneous standard. <u>In Re Saylors</u>, 869 F.2d 1434, 1438 (11th Cir. 1989). Under the clearly erroneous standard, the reviewing court may not reverse simply because it takes a different view of the evidence or would have decided the case differently, but this deference is not unlimited: The Court may consider documents and objective evidence which contradict a witness' story, or take notice that a story is internally inconsistent or so facially implausible that a reasonable fact finder would not credit it. <u>Anderson v. City of Bessemer</u>, 470 U.S. 564, 574-5 (1985).

II. Issues

Appellants contend that: 1) the U.S. Trustee's objection to the expense claimed by Appellants for payments due on furniture that Appellants did not intend to keep should have been overruled, because the plain language of 11 U.S.C. 1325(b) requires that the Court rely exclusively on the means test when computing the minimum Chapter 13 payment for above-median income debtors; and 2) the Bankruptcy Court should have confirmed the Debtors' plan, because the Bankruptcy Court does not have the discretion to thwart the means test by use of a good faith

Case No. 8:09-CV-1555-T-17

justification. Appellants contend that the amount of Appellants' plan payment does not determine whether the plan is proposed in good faith, because the statute specifically prescribes the approved amount for plan payments.

A. Context

The Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 ("BAPCPA") was enacted to curb certain abuses in the bankruptcy process. One perceived abuse was the easy access to Chapter 7 liquidation proceedings by consumer debtors who, if required to file under Chapter 13, could afford to pay some dividend to their unsecured creditors. See In re Hardacre, 338 B.R. 718 (Bk. N.D. Texas 2006).

Congress included the "means test" in BAPCPA, which differentiates between debtors who can repay a portion of their debt and, and debtors which cannot. The "means test" applies to a debtor whose income is above the state's median for a family of the same size and whose debts are primarily consumer debts. Application of the "means test" allows the U.S. Trustee to benefit from a rebuttable presumption of abuse which arises when the amount of disposable income the debtor could hypothetically contribute to a Chapter 13 plan rises above a certain threshold. In cases in which the presumption of abuse does not arise or is rebutted, the U.S. Trustee may pursue dismissal of a debtor's case under Sec. 707(b)(3), which provides that the Court may consider whether, under the totality of the circumstances, the debtor's financial situation demonstrates abuse.

Case No. 8:09-CV-1555-T-17

For above median income debtors, "disposable income" is defined as a debtor's "current monthly income," a defined term under Sec. 101(10A), less amounts reasonably necessary "to be expended" as determined by Sec. 707(b)(2)(A) and (B). See 11 U.S.C. Sec. 1325(b)(3). "Current monthly income" is defined as "the average monthly income from all sources that the debtor receives (in a joint case, both debtor and debtor's spouse receive) without regard to whether such income is taxable income, derived during the 6 months preceding the petition date. See 11 U.S.C. Sec. 101(10A).

For below median income debtors, the majority of courts have determined that Schedules I and J may be used to determine "projected disposable income." In Re Edmunds, 350 B.R. 636 (S.C. Sept. 18, 2006)

Section 1325(b)(1)(B) requires debtors to use all their "projected disposable income" to pay unsecured creditors during the applicable commitment period, the term of the plan.

B.   "Projected Disposable Income" in 11 U.S.C. Sec. 1325(b)(1)(B)

In this case, the Trustee objected to confirmation of the Appellants' proposed Plan, since the proposed Plan did not provide that all of Debtors' projected disposable income to be received during the applicable commitment period would be applied to make payments to unsecured creditors under the plan.

Appellants included in "amounts reasonably necessary to be expended," an amount for contractual payments for collateral which Appellants surrendered.  The Trustee argued that the

4

Case No. 8:09-CV-1555-T-17

expense claimed by Appellants for payments due on furniture which Appellants did not intend to keep was unreasonable.

Relying on the plain language of the statute, the assigned Bankruptcy Judge found "to be expended" to be a forward looking concept, and the inclusion of this concept established that Congress intended debtors and courts to look to the future to determine what expenses a debtor will be required to pay over the course of his Chapter 13 plan. If a debtor intends to surrender collateral, the payments on that debt are not amounts that are going to be expended. The assigned Bankruptcy Judge stated that, while Appellants' calculation was correct, since Appellants' did not have the present intention to pay the expenses stated in the proposed Plan, Appellants' plan was not proposed in good faith. To achieve confirmation, Chapter 13 debtors are required to propose their plans in good faith, and not by any means forbidden by law. See 11 U.S.C. Sec. 1325(a)(3). The Bankruptcy Court did not confirm the proposed Plan, and granted leave to file an Amended Plan.

There has been a great deal of debate on the correct method to determine "projected disposable income." See In re Neclerio, 393 B.R. 784 (Bankr. S.D. Fla. 2008)(collecting cases for discretionary approach and for mechanical historical approach). The Supreme Court has settled this issue, and determined that the discretionary approach is correct. The Supreme Court held that, in determining a Chapter 13 debtor's "projected disposable income, the court may account for changes in the debtor's income and expenses that are known or virtually certain at the time of confirmation. See Hamilton v. Lanning, 130 S.Ct. 2464 (2010).

5

Case No. 8:09-CV-1555-T-17

After consideration, the Court affirms the Bankruptcy Court's ruling sustaining the Trustee's objection to the inclusion of payments on indebtedness secured by collateral that Appellants surrendered in expenses reasonably necessary to be expended for the maintenance and support of Appellants.

C.  Good Faith

The Bankruptcy Code does not explicitly define "good faith." "Good faith" has been defined by case law, and is established by applying a multi-factor test, informed by subsequent legislative amendments.  See In re Lemaire, 898 F.2d 1346 (8th Cir. 1990)(citing Educational Assistance Corp. V. Zellner, 827 F.2d 1222 (8th Cir. 1987).  Some courts have held that, after BAPCPA, a debtor's ability to pay is no longer a factor under Sec. 1325(a)(3), and is appropriately considered only under Sec. 1325(b).  See, e.g., In re Barr, 341 B.R. 181 (Bkrtcy. M.D. N.C. 2006).  Before BAPCPA, the 1984 Code amendments created a formula to determine the amount of disposable income a debtor must dedicate to the plan; the amount was determined under Sec. 1325(a)(3) as a matter of good faith.

Analysis of a debtor's good faith in proposing a Chapter 13 plan includes pre-petition conduct as well as post-petition conduct.  In re McGovern, 297 B.R. 650 (S.D. Fla. 2003).  In In re Kitchens, 702 F.2d 885, 888 (11th Cir. 1983), the Eleventh Circuit Court of Appeals explains that:

> Broadly speaking, the basic inquiry should be whether or not under the circumstances of the case there has been an abuse of the provisions, purpose or spirit of [the

> chapter] in the proposal. Id. (citing 9 Collier on Bankruptcy para. 9.20 at 319 (14th ed. 1978); cited in In re Estus, 695 F.2d at 316; Deans v. O'Donnell, 692 F.2d at 972; In re Rimgale, 669 F.2d at 431.

The Kitchens factors include: (1) the amount of the debtor's income from all sources; (2) the living expenses of the debtor and his or her dependents; (3) the amount of attorney's fees; (4) the probable or expected duration of the debtor's Chapter 13 plan; (5) the motivations of the debtor and his sincerity in seeking relief under the provisions of Chapter 13; (6) the debtor's degree of effort; (7) the debtor's ability to earn and the likelihood of fluctuation in his earnings; (8) special circumstances such as inordinate medical expense; (9) the frequency with which the debtor has sought relief under the Bankruptcy Reform Act and its predecessors; (10) the circumstances under which the debtor contracted the debts and his or her demonstrated bona fides, or lack of same, in dealings with his creditors; and (11) the burden which the plan's administration would place on the trustee. Id. The list is non-exclusive, and other factors or exceptional circumstances may support a finding of good faith even though a debtor has proposed no or only nominal repayment to unsecured creditors. Id. After Kitchens, the following factors were added: (12) the type of debt to be discharged and whether such debt would be nondischargeable; (13) the accuracy of the plan's statements of debts and expenses and whether any inaccuracies are an attempt to mislead the court; (14) extent to which the claims are modified and extent of preferential treatment among classes of creditors.

Case No. 8:09-CV-1555-T-17

The Eleventh Circuit found that "the facts of each bankruptcy case must be individually examined in light of various criteria to determine whether the chapter 13 plan at issue was proposed in good faith. Id. The Eleventh Circuit further found that reasoning which focused only on the simple arithmetic of 11 U.S.C. Sec. 1325(a)(4) neglected the importance of the general good faith language of 11 U.S.C. Sec. 1325(a)(3). Id. at 888.

Under BAPCPA, Congress added an additional good faith requirement, requiring that a debtor's actions in filing a petition be in good faith, 11 U.S.C. Sec. 1325(a)(7). However, Congress left unchanged the requirement that a plan be proposed in good faith, 11 U.S.C. Sec. 1325 (a)(3). The Court does not read the Bankruptcy Code to erode past bankruptcy practice absent a clear indication that Congress intended such a departure. See Travelers Cas. and Sur. Co. Of America v. Pacific Gas & Electric Co., 549 U.S. 443, 454 (2007).

The purpose of Chapter 7 proceedings is debt avoidance--to give the honest debtor a fresh start; however, the purpose of Chapter 13 proceedings is debt repayment--to repay the debtor's creditors to the fullest extent possible. In In re Waldron, 785 F.2d 936 (11th Cir. 1986), the Eleventh Circuit held:

> We hold that with section 1325(a)(3) Congress intended to provide bankruptcy courts with a discretionary means to preserve the bankruptcy process for its intended purpose. Accordingly, whenever a Chapter 13 petition appears to be tainted with a questionable purpose, it is incumbent upon the bankruptcy courts to examine and question the debtor's motives. If the court discovers unmistakable manifestations of bad faith, as we do here,

8

Case No. 8:09-CV-1555-T-17

>  confirmation must be denied.
>
>  Unmistakable manifestations of bad faith need not be based upon a finding of actual fraud, requiring proof of malice, scienter or an intent to defraud. We simply require that the bankruptcy courts preserve the integrity of the bankruptcy process by refusing to condone its abuse.

In re Waldron, 785 F.2d at 941.

The Court agrees that strict compliance with the means test does not necessarily satisfy a debtor's burden of demonstrating good faith in the proposal of his plan. In re Edmunds, 350 B.R. 636 (Bkrtcy. D.S.C. 2006). Subsequent code amendments have overridden some of the Kitchens factors; others remain viable. "Once Sec. 1325(b) is satisfied, the debtor must also comply with the good faith requirement in Sec. 1325(a)(3). Good faith has no role in assessing whether the amount of income paid into the plan is sufficient, but good faith and the remaining Kitchens factors remain relevant to the confirmability of the plan." In re Shelton, 370 B.R. 861 (Bkrtcy. N.D. Ga. 2007).

After consideration, the Court affirms the factual finding of the Bankruptcy Court that Appellants' plan was not proposed in good faith. Appellants' proposed plan was technically correct but it was not accurate. Because Appellants' reasonable and necessary expenses were overstated, less than all of Appellants' disposable income was available to creditors. The Court affirms the decision of the Bankruptcy Court to deny confirmation based on the Bankruptcy Court's application of 11 U.S.C. 1325(a)(3) to the words "to be" in 11 U.S.C. Sec. 1325(b)(2) in a case where the Debtors expressly had no intention to pay the expense for

Case No. 8:09-CV-1555-T-17

surrendered collateral. The Bankruptcy Court indicated that including an amount for surrendered collateral in Appellants' calculation of "amounts reasonably necessary to be expended" without the present intention to pay that expense amounted to fraud. The Bankruptcy Court did not err in denying plan confirmation, or in dismissing the case where an amended plan was not filed. Accordingly, it is

**ORDERED** that the decision of the Bankruptcy Court is **affirmed**.

**DONE and ORDERED** in Chambers, in Tampa, Florida on this 29th day of September, 2010

ELIZABETH A. KOVACHEVICH
United States District Judge

Copies to:
All parties and counsel of record